**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

FORWARD FINANCING LLC,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 1:24-CV-11689-BEM
    )
UNITED STATES SMALL BUSINESS    )    *Leave to file excess pages granted*
ADMINISTRATION; ISABELLA    )    *on June 20, 2025, ECF 36.*
CASILLAS GUZMAN, in her official    )
Capacity as Administrator of the Small    )
Business Administration; JANET YELLEN, )
In her official capacity as United States    )
Secretary of Treasury; and THE UNITED    )
STATES OF AMERICA,    )
    )
    Defendants.    )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

The United States Small Business Administration ("the SBA"), Isabella Casillas Guzman, and Janet Yellen,[1] Defendants, by and through their counsel Leah B. Foley, United States Attorney for the District of Massachusetts, submit their Memorandum in Support of Their Motion for Summary Judgment.

**<u>INTRODUCTION</u>**

Plaintiff Forward Financing ("Plaintiff") brings this action pursuant to the Administrative Procedure Act ("APA"), 7 U.S.C. § 551 *et seq.*, to challenge the Small Business Administration's ("SBA") denial of its application for forgiveness of a Paycheck Protection

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kelly Loeffler is automatically substituted for former SBA Administrator Isabella Casillas Guzman; and Scott Bessent is automatically substituted for Janet Yellen as the United States Secretary of Treasury.

Program ("PPP") loan under the Coronavirus Aid, Relief, and Economic Security Act of 2020 ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020).  Amended Complaint ("Complaint") (ECF No. 16).   Plaintiff claims that SBA acted contrary to law or in excess of statutory authority when it used a pre-CARES Act small-business loan ineligibility rule for financial businesses (13 C.F.R. § 120.110(b)) to deny it loan forgiveness.   Plaintiff also contends that the so-called Exclusion Rule is arbitrary and capricious in excluding businesses of financing from loan forgiveness and other PPP benefits; while granting such PPP benefits to other businesses. Finally, Plaintiff contends that SBA acted arbitrarily because SBA forgave loans to purportedly similarly situated businesses, including business with the same industry classification code (a NAICS code), that were previously ineligible for small business loans under § 120.110, but it did not forgive Plaintiff's loan.

Plaintiff's contentions should be rejected.   Plaintiff's claim ignores that the CARES Act's text, structure and overall context, and its placement *within* the existing Section 7(a) program of the Small Business Act of 1958, Pub. L. No. 85–536, 72 Stat. 384, make clear that Congress did not disturb SBA's longtime Section 7(a) ineligibility rule for financial businesses under § 120.110(b).   Plaintiff's second claim should be denied given Congress' mandate to implement a massive aid program without delay, SBA rationally and reasonably concluded that it needed to focus on critical actions to implement the programmatic changes that Congress mandated and the modifications needed to quickly disburse PPP loans to small businesses, rather than whether it should make changes to other rules, such as § 120.110, that Congress had not required.   Plaintiff's final contention fails because its claim of similarity to other businesses is speculative does not account for aspects of the loan forgiveness process (such as manual versus automated review) and regulatory exclusions from the financial businesses rule, that also affect

2

whether specific loans are forgiven or not.   Because Plaintiff's arguments lack merit, SBA's motion for summary judgment should be granted, and SBA's decision denying Plaintiff loan forgiveness should be affirmed.

## **BACKGROUND**

### A.  The Small Business Administration's Section 7(a) Loan Program

The Small Business Act of 1958, confers "extraordinarily broad powers" on SBA to provide a wide variety of technical, managerial, and financial assistance to small-business concerns. 15 U.S.C. § 631(a); *SBA v. McClellan*, 364 U.S. 446, 447 (1960).  As pertinent here, Section 7(a) of the Act, 15 U.S.C. § 636(a), "empower[s]" SBA to guarantee general-purpose loans to small businesses "for plant acquisition, construction, conversion, or expansion, including the acquisition of land, material, supplies, equipment, and working capital[.]" In performing this function, SBA is further empowered to "establish general policies" governing the "granting and denial" of financial assistance; to "make such rules and regulations as [it] deems necessary to carry out the authority vested in [it];" and to "take any and all actions … [it] determines … are necessary or desirable in making … loans." *Id.* §§ 633(d); 634(b)(6), (7).[2]

_____

[2] Ordinarily, to qualify for a Section 7(a) loan an applicant must be a U.S.-based "operating" business that is organized for profit, 13 C.F.R. § 120.100(a)-(c); meet size standards for a "small" business set forth in the statute and SBA rules (usually stated in terms of the aggregate number of employees, or average annual receipts, of the applicant and its affiliates), 15 U.S.C. § 632(a)(1),  (2); 13 C.F.R. §§ 120.100(d), 121.101, 121.301, 121.201; and demonstrate that the desired credit is not available elsewhere on reasonable terms, 15 U.S.C.  § 632(h);  13 C.F.R.  §§ 120.100(e), 120.101.  An applicant must also meet SBA standards of creditworthiness, 13 C.F.R. § 120.150; collateral requirements, *id.* §§ 120.150(h), 120.191; and pay a "guarantee fee" to SBA equal to 2-3.75 percent of SBA's share of the loan, 15 U.S.C. § 636(a)(18).  Those holding 20 percent or more of the applicant's equity shares must personally guarantee the loan. 13 C.F.R. § 120.160(a).

### B. SBA's 7(a) Loans and the Financial Businesses Rule

Pursuant to the powers conferred on SBA to adopt rules, regulations and general policies as necessary or desirable in making SBA-guaranteed loans to small-business concerns, 15 U.S.C. § 633(d), 634(b)(6), (7), SBA determined that Section 7(a) loans should not be available to certain types of businesses.

In 1996, SBA's rules against loans to certain categories of businesses (currently 17 in all) were codified at 13 C.F.R. § 120.110 ("Section 120.110") *see* SBA, Business Loan Programs, Final Rule, 61 Fed. Reg. 3226 (Jan. 31, 1996). Section 121.110 provides that the types of businesses ineligible for SBA business loans include: "Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors . . . ." ("Financial Businesses Rule")

SBA's Financial Businesses Rule, like other provisions of Section 120.110, dates back to a statement of loan policy adopted in 1954 under authority of the Small Business Act of 1953, providing, *inter alia*, that "[f]inancial assistance will not be granted" by SBA "[i]f the loan is to provide capital to an enterprise primarily engaged in the business of lending or investment." 13 C.F.R. § 101.4(d)(9) (1954); *see* SBA, Final Rule, 19 Fed. Reg. 5440, 5441 (Aug. 26, 1954).

SBA explained the policy underlying Section 120.110(b) in SBA Standard Operating Procedure ("SOP") 50 10 4(E), *Loan Processing*, https://www.sba.gov/document/sop-50-10-4e- loan-processing-posted-11-20-00. Whereas Congress intended Section 7(a) loans for "plant acquisition, construction, conversion, or expansion, including the acquisition of land, material, supplies, equipment, and working capital," 15 U.S.C. § 636(a), by contrast businesses engaged in lending:

> create and hold interest-bearing notes. The act of holding such notes for their potential investment income is counter to SBA's philosophy that a small business should occupy the time, attention, and labor of the owners/operators in the continual task of providing goods and services and not with enterprises

4

which merely hold property.

SOP 50 10 4, Subpart A, Chap. 2, ¶ 8(b)(1), at 29.

### C. The CARES Act and the Paycheck Protection Program

The CARES Act was enacted to provide emergency economic assistance and support to individuals, families, businesses, and health-care providers coping with the COVID-19 pandemic. *See* SBA, Business Loan Program Temporary Changes; Paycheck Protection Program, Interim Final Rule, 85 Fed. Reg. 20811, 20811-12 (Apr. 15, 2020); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1247 (11th Cir. 2020) (describing purposes of the CARES Act). Among its measures, CARES Act § 1102 added the PPP to the Section 7(a) program to extend relief to small businesses experiencing economic hardship due to public-health measures undertaken to minimize the public's exposure to the coronavirus. *See* 85 Fed. Reg. at 20811. CARES Act § 1102(a)(2) temporarily expanded SBA's business-loan authority under Section 7(a) by adding a new paragraph, 15 U.S.C. § 636(a)(36). Subparagraph 636(a)(36)(B) provided that "*[e]xcept as otherwise provided in this paragraph*, the [SBA] may guarantee [PPP] loans *under the same terms, conditions, and processes as [other] loan[s] made under*" Section 7(a). (Emphasis added).

"[T]he PPP was not created as a standalone program but was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority." *Gateway Radiology*, 983 F.3d at 1256; *Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 227 (2d Cir. 2021) ("Congress enacted the [PPP] on the foundation of the SBA's 7(a) loan program"). The statute sets forth precise ways, however, in which Congress intended PPP loans

to differ from other Section 7(a) loans. 15 U.S.C. § 636(a)(36)(D)-(W).[3]

Congress gave several indications in the CARES Act that it intended SBA to extend relief to the Nation's small businesses without delay.  *See* Declaration of Dianna L. Seaborn ¶¶ 5-9 ("Seaborn Decl.") (Exhibit B); Declaration of Martin F. Andrews ¶¶ 6-10 ("Andrews Decl.") (filed herewith) (Exhibit C).  First, the CARES Act initially authorized the agency to guarantee an enormous amount in PPP loans, up to $349 billion, by June 30, 2020, a matter of just three months.  CARES Act § 1102(b)(1); 15 U.S.C. § 636(a)(36)(A)(ii)-(iii), (B). Second, to facilitate that task Congress situated the PPP within SBA's pre-existing Section 7(a) infrastructure, while at the same time streamlining Section 7(a) loan-origination requirements for PPP borrowers and lenders by, for example, eliminating borrower collateral and personal loan-guarantee requirements. *See* 15 U.S.C.§ 636(a)(36)(J).  Third, Congress directed SBA to permit additional qualified lending institutions that were not already accredited Section 7(a) lenders to participate in the PPP, and mandated that all PPP lenders be given "delegated authority" to make and approve PPP loans without prior SBA review. *Id.* § 636(a)(36)(F)(ii)(I), (iii).  Fourth, Congress instructed SBA to issue regulations implementing the PPP within just 15 days of the CARES Act's enactment, 15 U.S.C. § 9012, what one court described as "warp speed for regulatory action," *see In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1262 (11th Cir. 2020).  To make that feat of agency decision- making possible, Congress also instructed SBA to bypass APA notice-and-comment procedures for

_____

[3] Among these differences, the PPP authorized SBA to guarantee loans to nonprofit organizations, veteran organizations, Tribal concerns, independent contractors, and self-employed persons, in addition to small-business concerns (*id*. § 636(a)(36)(D)(i), (ii)); relaxed size limitations to allow businesses with as many as 500 employees (or more, depending on the industry) to receive assistance (*id*. § 636(a)(36)(D)(i)(I)); and selectively waived certain SBA affiliation rules used to make business "size" determinations (*id*. § 636(a)(36)(D)(iv); *see* 13 C.F.R. 121.103(a)). The PPP also waived the "no credit elsewhere," personal guarantee, collateral, and guarantee fee requirements imposed by Section 7(a) and SBA rules and policies, 15 U.S.C. § 636(a)(36)(H)-(J), (L). *See* n. 1 *supra*.

rulemaking.  15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)).

### D.    The First PPP IFR

Pursuant to Congress's directive, SBA (in conjunction with the Department of the Treasury) issued the First PPP Interim Final Rule ("First PPP IFR") less than a week after the CARES Act's March 27, 2020, enactment, posting the rule on its website on April 2, 2020. Seaborn Decl. ¶ 9.  Generally speaking, the First PPP IFR set forth borrower eligibility and application requirements for PPP loans, 85 Fed. Reg. at 20,812-15, and lenders' responsibilities under the streamlined PPP underwriting process, *id.* at 20,815-16.  As relevant here, the rule stated also that businesses "identified in 13 CFR 120.110" are "not eligible for PPP loans[,]" with the exception of "nonprofit organizations authorized by the [CARES] Act [15 U.S.C. § 636(a)(36)(D)(i)]." *Id.* at 20812. *See* Seaborn Decl. ¶¶ 15-16.[4]  The PPP launched the day after announcement of the First PPP IFR, on April 3, 2020. *See* SBA Release No. 20-30, https://www.sba.gov/article/2020/apr/03/sbas-paycheck-protection-program-small-businesses-affected-coronavirus-pandemic-launches.

In light of Congress's clear intent, the economic need to launch the PPP, and the short time in which to issue the necessary regulations, SBA focused its rulemaking efforts on the modifications to Section 7(a) requirements that Congress had expressly prescribed, and, to further expedite the availability of PPP loans, on developing a streamlined, less time-consuming set of loan-application and underwriting procedures.  Seaborn Decl. ¶¶ 11-12; *see also* Andrews Decl. ¶ 10.   Because an essential purpose of the First PPP IFR was to inform borrowers and lenders of what they "need[ed] to know and do" to immediately apply for and approve PPP loans, SBA set forth in the rule what it considered the PPP's "key provisions," including Section 7(a) terms and conditions that Congress had modified, and those it had *not* modified.

---

[4] Plaintiff refers to the First PPP IFR as the "Exclusion Rule."   (Complaint ¶ 5)

Among those key provisions that continued to apply to PPP was Section 120.110, which included the Financial Businesses Rule, which made lenders ineligible for PPP loans. 85 Fed. Reg. at 20811, 20812; Seaborn Decl. ¶¶ 15-16.

### E. SBA's Streamlined PPP Loan-Origination Process

Consistent with Congress's intent and the needs of small businesses for assistance, SBA established a system that proved capable of disbursing almost 5 million PPP loans by the program's initial June 30, 2020, deadline. Andrews Decl. ¶¶ 11-13. To accomplish this, SBA authorized approximately 850 additional qualified lenders to approve and issue PPP loans, First PPP IFR, 85 Fed. Reg. at 20815, 20816; Andrews Decl. ¶ 11, and established a streamlined PPP loan- origination process, in which (i) the usual Section 7(a) underwriting requirements were waived, (ii) borrowers were permitted to self-certify their eligibility on PPP loan applications submitted to lenders; (iii) lenders were permitted to rely (in good faith) on borrowers' self-certifications, documentation, and calculations; and (4) lenders could obtain SBA's guarantee for a loan by certifying to SBA that the borrower had made the necessary certifications and had submitted the needed documentation. First PPP IFR, 85 Fed. Reg. at 20182, 20814-16; SBA Forms 2483, 2484; Andrews Decl. ¶ 11.

Under this process, lenders were not required to forward borrowers' applications or supporting documentation to SBA, but instead maintained these records in their files. First PPP IFR at 20814. As a result, SBA did not (and as a practical matter could not) make independent PPP borrower-eligibility determinations at the loan-origination stage. Andrews Decl. ¶ 12.

### F. Forgiveness and SBA Review of PPP Loans

CARES Act § 1106, as amended, allows "eligible recipient[s]" of PPP loans to obtain forgiveness of their loans in whole or in part based on their payroll costs and payments for rent, utilities, mortgage interest, and other allowable expenses. 15 U.S.C. § 636m(b)(1)-(8),

8

(d); First PPP IFR, 85 Fed. Reg. at 20811, 20813.  To obtain forgiveness, an eligible borrower submits an application and supporting documentation to its lender, which then determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA.  15 U.S.C. § 636m(g); SBA, Business Loan Program Temporary Changes; Paycheck Protection Program— Revisions to Loan Forgiveness and Loan Review Procedures, Interim Final Rule, 85 Fed. Reg. 38304, 38306 (June 26, 2020).  SBA then remits the appropriate amount to the lender—subject, however, to any SBA review of the loan.  15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38306.

The simplified PPP loan application and underwriting process, combined with the large number of first-time SBA borrowers and lenders lacking familiarity with SBA rules, created a heightened risk of loans being erroneously approved by lenders.  Andrews Decl. ¶ 14.  To maintain the PPP's fiscal integrity, SBA has implemented a system of PPP loan review, and if it determines during a review that the borrower was ineligible for its PPP loan, it denies forgiveness of the loan. *See* SBA, Business Loan Program Temporary Changes; Paycheck Protection Program-SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, 85 Fed. Reg. 33010, 33012 (June 1, 2020)); Andrews Decl. ¶ 15.

Due to the enormous volume of loans and the SBA's limited staff, the agency relies on a two-step, partially automated process to conduct loan reviews.  Andrews Decl. ¶¶ 16-17.  First all PPP loans undergo automated screening for anomalies and attributes indicative of noncompliance with select eligibility requirements, fraud, and other abuse. *Id.* Second, SBA conducts a manual forgiveness review for eligibility, fraud, and/or abuse of (i) all loans selected during the automated screening process, (ii) an additional statistically valid sample of loans, and (iii) any loans for which SBA receives credible tips from law enforcement, inspectors general, whistleblowers, or the media. *Id.* ¶ 17.  If a loan, however, is not selected during automated screening or otherwise chosen for manual forgiveness review, then SBA remits the forgiveness payment in the amount requested by the lender. *Id.*

## UNDISPUTED MATERIAL FACTS AND PROCEDURAL HISTORY

Plaintiff Forward Financing is a limited liability company located in Massachusetts. (Defendant's Statement of Undisputed Material Facts ("Def. SMF" ¶ 1) (Exhibit A). Plaintiff is in the business of purchasing future receivables from merchants at a discount. *Id.* In other words, Plaintiff provides invoice factoring services, which involves buying a business's unpaid invoices at a discount. *Id.*

The First PPP IFR was enacted and publicly posted on the SBA website on April 2, 2020. (Def. SMF ¶ 2). The First PPP IFR was published in the Federal Register at 85 Fed. Reg. 20811 (April 15, 2020). (Def. SMF ¶ 2).

On the SBA website, the First PPP IFR, in subsection (C), entitled "How Do I Determine If I Am Ineligible," states: "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2," 85 FR 20811. (Def. SMF ¶ 3). A link was provided to 13 C.F.R. 120.110, which lists the types of businesses ineligible for SBA business loans, including "Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors." 13 C.F.R. 120.110(b). *Id.*

On June 23, 2020, Forward Financing applied to LenderClub Bank (the "Lender") for a PPP loan. (Def. SMF ¶ 4). On June 29, 2020, the Lender approved Forward Financing's application for the loan amount of $1,982,962.00. (Def. SMF ¶ 5). On July 1, 2020, Forward Financing and the Lender both signed the Loan Agreement. (Def. SMF ¶ 6). On July 3, 2020, the loan proceeds were disbursed. (Def. SMF ¶ 7).

On November 4, 2020, Forward Financing submitted a PPP Loan Forgiveness to the Lender, requesting forgiveness in the full amount of the loan.  (Def. SMF ¶ 8).

On July 27, 2021, July 28, 2021, and August 4, 2021, the SBA requested additional information from Forward Financing (via the Lender).  (Def. SMF ¶ 9).  On August 10, 2021, Forward Financing provided the additional information.  (Def. SMF ¶ 10).

Forward Financing's loan failed automated review due to being flagged as a potentially ineligible business and was referred for manual review.  (Def. SMF ¶ 11).  As a result of the automated review failure, and because of the size of the loan and multiple hold codes, Forward Financing's loan underwent manual forgiveness review, during which it was determined that Forward Financing was an ineligible financial business under 13 C.F.R. § 120.110(b).   (Def. SMF ¶ 12).

The SBA issued a final loan review decision denying forgiveness of the loan on the ground that Forward Financing "is a financial business engaged in lending, investments or an ineligible business engaged in financing or factoring."  (Def. SMF ¶ 13).    Forward Financing appealed the SBA Loan Forgiveness Denial to SBA's Office of Hearings and Appeals ("OHA").  (Def. SMF ¶ 14).

On February 23, 2022, the OHA issued its decision affirming the denial of SBA forgiveness of Forward Financing's loan.  (Def. SMF ¶ 15).

Plaintiff Forward Financing filed its original complaint on June 28, 2024.  (Def. SMF ¶ 16).   On September 12, 2024, Forward Financing filed its Amended Complaint ("Complaint") (Def. SMF ¶ 17).    This case initially was assigned to Judge Saylor but was re-assigned to this

11

Court on January 21, 2025.  *Id.*

In the Complaint, Plaintiff argues that (1) the First PPP IFR (what Plaintiff terms "the Exclusion Rule") is contrary to law, specifically the CARES Act and the APA; (2) the First PPP IFR is arbitrary and capricious and (3) the application of the First PPP IFR to Plaintiff is arbitrary and capricious within the meaning of the Administrative Procedure Act ("APA").

For the reasons that follow, Plaintiff' claims lack merit, they are not entitled to the relief they seek, and Defendants are entitled to summary judgment.

## LEGAL STANDARDS

### A. Administrative Procedures Act

Courts reviewing agency decisions under the Administrative Procedures Act ("APA") "shall decide all relevant questions of law, interpret constitutional and statutory provisions and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  A court shall "hold unlawful and set aside" agency actions and findings that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  Additionally, "the court shall review the whole record or those parts of it cited by a party."  *Id.*

In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overruled the *Chevron* doctrine*, id* at 412, and held that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional

limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id*. at 412-413.

However, the Court clarified that, "we do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful— including the Clean Air Act holding of *Chevron* itself—are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Id.* at 412.

## B. <u>Summary Judgment</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). The court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Id.* (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)). However, the Court need not indulge theories that are "the stuff of an opposing party's dreams." *Id.* "On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." *Id.* "This evidence 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" *Id.* (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

## ARGUMENT

Plaintiff does not dispute that, as a business engaged in lending, it falls within one of the categories of businesses that the SBA has long deemed to be ineligible for SBA 7(a) loans, specifically the SBA's Financial Businesses Rule under 13 C.F.R. § 120.110(b).   In addition, Plaintiff does not dispute that the First PPP Interim Final Rule made clear that the businesses that fell within the Section 120.110 categories of ineligibility continued to be ineligible for SBA 7(a) loans, including the new Paycheck Protection Program loans that were created under the CARES Act.   Furthermore, Plaintiff does not argue, nor could it, that it had no notice of the First PPP Interim Final Rule, which was promulgated, published in the Federal Register, and posted on SBA's public website before Plaintiff even applied for the loan at issue in this case.

Instead, Plaintiff challenges the denial of its PPP loan forgiveness application by arguing that:   (1)  the First PPP IFR (what Plaintiff terms "the Exclusion Rule") is contrary to law, specifically the CARES Act and the APA;   (2)  the First PPP IFR rule is arbitrary and capricious and (3)  the application of the First PPP IFR to Plaintiff is arbitrary and capricious within the meaning of the Administrative Procedure Act ("APA").    Each of these claims fail.

### A.    The First PPP IFR Is Not Contrary to Law

Plaintiff alleges that the First PPP IFR (what Plaintiff calls the "Exclusion Rule") is contrary to the CARES Act, specifically 15 U.S.C. §§ 636(a)(36)(D)(i) which provides that "in addition to small business concerns, any business concern . . . . shall be eligible to receive a covered [PPP] loan" if the business meets the CARES Act's size requirement, makes the required good-faith borrower certification, and has been operation as of February 15, 2020. (Complaint ¶ 77).   Plaintiff reads this portion of the CARES Act to mean that PPP loans shall

14

be "broadly available" to "all 'business concerns' meeting the criteria set forth in the CARES Act." (Complaint ¶ 80). This argument is meritless.

Plaintiff's interpretation fails because it construes § 636(a)(36)(D)(i) in isolation, treats the PPP as a standalone loan program, and fails to consider the statutory scheme as a whole. *See King v. Burwell*, 576 U.S. 473, 486 (2015) ("[W]e must read the words 'in their context and with a view to their place in the overall statutory scheme.'"); *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 289-290 (2010) ("[s]tatutory language has meaning only in context"); *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) (A statute cannot be reviewed "in isolation"); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (A statute "should not be read as a series of unrelated and isolated provisions.").

When the CARES Act is considered as a whole, it is plain that § 636(a)(36)(D)(i) does not set forth the exclusive eligibility criteria for PPP loans, but only expands by size and type the class of entities to which SBA "may," 15 U.S.C. § 636(a)(36)(B), guarantee PPP loans *under the Section 7(a) program. See Tidewater Finance Co. v. SBA*, 2025 WL 763940, *5 (E.D. VA Mar. 11, 2025) ("the first PPP statute is unambiguous. Congress placed the First PPP under Section 7(a) of the Small Business Act."); *Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 228 (2d Cir. 2021); *In re Gateway Radiology Consultants*, 983 F.3d 1239, 1256 (11th Cir. 2020). "Congress gave the SBA Administrator discretion to exclude certain types of businesses from the" PPP. *Pharaohs*, 990 F.3d at 226. The CARES Act did not take that away.

*First*, the CARES Act places the PPP under SBA's existing Section 7(a) loan program. 15 U.S.C. § 636(a)(36)(B); *Tidewater*, 2025 WL 763940 at *5; *Pharaohs*, 990 F.3d at 227 ("Congress enacted the [PPP] on the foundation of the SBA's 7(a) loan program."). It provides that PPP loans are issued "under the same terms, conditions, and processes" as other Section 7(a) loans, except as modified by the CARES Act. *Id.* Because the PPP was "not created as a

standalone program," it remained "subject[]to existing conditions and regulations, as well as existing SBA authority," albeit with some requirements relaxed. *Gateway Radiology*, 983 F.3d at 1249, 1256; *see also Diocese of Rochester v. SBA*, 466 F. Supp. 3d 363, 375-76 (W.D.N.Y. 2020); *Tradeways, Ltd. v. Dep't of the Treasury*, 2020 WL 3447767, at *4 (D. Md. June 24, 2020). When viewed in context, this conclusion becomes "obvious," *Gateway Radiology*, 983 F.3d at 1256, while Plaintiff's interpretation is simply "not tenable." *Pharaohs*, 990 F.3d at 227.

  ***Second***, one "of the most basic" canons of statutory interpretation is that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up); *see also United States v. Simms*, 914 F.3d 229, 241 (4th Cir. 2019) ("[W]e cannot adopt a reading . . . that renders part of the statute superfluous over one that gives effect to its every clause and word."); *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471–72 (4th Cir. 2011) ("[A]ll language . . . should be given full effect."). Plaintiff's interpretation would do the opposite and is "illogical." Gateway Radiology, 983 F.3d at 1258.

  For example, § 636(a)(36)(D)(i) adds "nonprofit organization[s]," previously ineligible for loans pursuant to 13 C.F.R. § 120.110(a), to the statute's list of PPP-eligible entities. If Plaintiff's position were correct – that the CARES Act overrides § 120.110 – this provision would have been unnecessary. The "proper inference" to be drawn from Congress' singling out nonprofits for PPP eligibility under § 636(a)(36)(D)(i) "is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). "This strongly suggests that Congress deliberately chose not to change the Administrator's statutory discretion to exclude businesses, other than those it expressly identified in the CARES Act." *Pharaohs GC, Inc.*, 990 F.3d at 227.

  It certainly "does not follow" that Congress intended "that courts have authority to create

other[]" exceptions. *United States v. Johnson*, 529 U.S. 53, 58 (2000); *see also Gallardo v. Marstiller*, 142 S. Ct. 1751, 1759 (2022) (courts "must give effect to, not nullify, Congress' choice to include limiting language in some provisions but not others"). "If the sole eligibility requirement were size, then those other provisions would also be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect." *Gateway Radiology*, 983 F.3d at 1258.

 ***Third***, "where . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons*, 434 U.S. 575, 581 (1978); *Pharaohs*, 990 F.3d at 227 ("We presume that Congress legislates against the backdrop of existing law."); *W. Virginia CWP Fund v. Bender*, 782 F.3d 129, 140 (4th Cir. 2015) ("We . . . may assume . . . that Congress intended to retain the agency's interpretation of the prior version of the statute."). The Small Business Act empowered SBA to establish rules and policies regarding the granting and denial of loans as it deemed necessary or desirable in the public interest.15 U.S.C. §§ 633(d), 634(b)(6), (7). SBA determined nearly seven decades ago (and reaffirmed 25 years ago) that it is not consistent with the mandate of the Small Business Act to make loans to certain types of businesses, now described in § 120.110, even though they may otherwise qualify as small businesses eligible for Section 7(a) loans. *See* 13 C.F.R. § 101.4(d)(9) (1954); SBA, Final Rule, 19 Fed. Reg. 5440, 5441 (Aug. 26, 1954); SOP 50 10 4(E), *Loan Processing*, Subpart A, Chap. 2, ¶ 8(b)(1) (eff. Jan. 29, 1999), at 28-29. Congress understood it was not passing the CARES Act in a vacuum. By providing that, "*in addition to*" small-business concerns, "any business concern, nonprofit organization, veterans . . . organization, or [certain] Tribal business concern[s]" meeting prescribed size standards "shall be eligible to receive" PPP

loans under Section 7(a), § 636(a)(36)(D)(i) (emphasis added), Congress showed its awareness

of the existing Section 7(a) framework within which it was legislating. Its selective modification

of various features of that program, including SBA rules concerning affiliation, collateral,

personal guarantees, and loan fees, further exhibits Congress's familiarity with SBA's

administration of that program. *See Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 522 (5th Cir.

1989) ("Congressional actions after the interpretation by the Secretary also indicate

acquiescence."). Yet § 636(a)(36)(D)(i) gives no indication that Congress, by authorizing loans to

*additional* sizes and types of entities, tacitly *prohibited* enforcement of other, unspecified

conditions that SBA traditionally has placed on eligibility for those loans. The most natural

reading of § 636(a)(36)(D)(i) is that it identifies certain additional entities to which PPP loans

may be granted "in addition to" the small businesses traditionally eligible for Section

7(a) loans, and that, in light of § 636(a)(36)(B), these additional entities are eligible to receive

PPP loans under the same terms and conditions as small businesses historically have been for

other Section 7(a) loans, "[e]xcept as otherwise provided" under the CARES Act. *See Pharaohs*,

990 F.3d at 227; *Defy Ventures v. SBA*, 469 F. Supp. 3d 459, 473 (D. Md. 2020); *Tradeways*,

2020 WL 3447767, at *13; *Diocese of Rochester*, 466 F. Supp. 3d at 375-76.

**Finally**, Plaintiff contends that by using the phrase "any business concern" Congress

meant that *every* business concern (subject only to size requirements) was eligible for a PPP loan

without exception. Pl.'s Br. at 10-11, 13. The word "any" can differ from its ordinary meaning

depending on its context. *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012); *JetPay

Corp. v. IRS*, 26 F.4th 239, 242 (5th Cir. 2022) ("[t]he most grammatical reading of a sentence in

a vacuum does not always produce the best reading in context.") (citation omitted). This is

especially so if "strange and indeterminate results" would emerge from adopting its ordinary

18

meaning. *Nixon v. Mo. Mun. League,* 541 U.S. 125, 132-33 (2004); *see also Utility Air Reg.
Grp.v. EPA*, 573 U.S. 302, 316-20 (2014) (construing the phrase "any air pollutant" in context to
mean just those pollutants that could be "sensibly regulated at the statutory thresholds"); *Small v.
United States*, 544 U.S. 385, 388-94 (2005) (holding that the term "any court" in 18 U.S.C. §
922(g)(1) was limited to domestic courts because, *inter alia*, including foreign courts would
create anomalies that Congress could not have intended). So too here.

Construing § 636(a)(36)(D)(i) such that "any" means "every" would lead to strange and
unusual results. For example, under Plaintiff's interpretation, not only did Congress supposedly
direct that PPP loans be made available to financial businesses, but it also compelled SBA to
make loans available to "[b]usinesses located in a foreign country"; "[p]yramid sale distribution
plans;"  "[b]businesses engaged in . . . illegal activit[ies]"; "[p]rivate clubs and businesses" with
discriminatory membership policies; businesses owned or operated by prison inmates;
"[b]usinesses that have previously defaulted on . . . Federal loan[s]"; and "[b]usinesses primarily
engaged in political or lobbying activities." 13 C.F.R. § 120.110(e), (f), (h), (i), (n), (q), (r); *see
also Am. Ass'n of Political Consultants v. SBA*, 2020 WL 1935525, at *2 (D.D.C. Apr. 21, 2020)
(noting longstanding U.S. Government policy against use of Federal funds "for lobbying or
political activities"). Nothing in § 636(a)(36)(D)(i) supports the conclusion that Congress
intended to compel SBA, *sub silentio*, to make dramatic departures from longstanding policies
against financial assistance to businesses falling into these categories. *See Whitman v. Am.
Trucking Ass'n.*, 531 U.S. 457, 468 (2001) (Congress "does not . . . hide elephants in
mouseholes."); *Jones v. United States*, 526 U.S. 227, 234 (1999) ("Congress is unlikely to intend
any radical departures from past practice without making a point of saying so."); *Diocese of
Rochester*, 466 F. Supp. 3d at 376 (same); *Tradeways*, 2020 WL 3447767, at *13 (same).

19

Plaintiff alleges that the Supreme Court's decision in *Loper Bright Enters.v. Raimondo,* "fundamentally alters" the "legal landscape relating to the forgiveness of [PPP] loans." (Complaint ¶ 1).   However, the Supreme Court in *Loper Bright* stated that "we do not call into question prior cases that relied on the *Chevron* framework."   In any event, multiple courts before and after *Loper Bright* have interpreted eligibility for PPP loans in the context of the restrictions of Section 7(a) of the Small Business Act, including the Financial Businesses Rule.  13 C.F.R. § 120.110(b).

The recent decision in *Tidewater Finance Co.* v. SBA, 2025 WL 763940, *5 (E.D. VA Mar. 11, 2025), is directly on point.   In *Tidewater,* the Petitioner's loan forgiveness application was denied because it fell within the Financial Business Rule exclusion.  Id. at *2.   The Petitioner argued that the PPP violated the CARES Act and was contrary to law.  Id. at *4.  The district court for the Eastern District of Virginia held that "the court agrees that the First PPP statute is unambiguous.  Congress placed the First PPP under Section 7(a) of the Small Business Act" and "It is undisputed that small business loans under Section 7(a) have historically been subject to the limitations listed in 13 C.F.R. § 120.110."  *Id.* at *5.   That court noted that the First PPP states: "[e]xcept as otherwise provided in this paragraph, [Respondent] may guarantee covered loans *under the same terms, conditions and processes* as a loan made under this subjection."  *Tidewater* at *5 (quoting 15 U.S.C. § 636(a)(36)(B)) (emphasis added).  The court concluded that "[b]y permitting Respondent to apply the "same terms, conditions, and processes from prior small business loans to PPP loans, the statute's plan language grants Respondent discretion to apply 13 C.F.R. § 120.110 to PPP loans."  *Id.*   Thus, the court rejected Petitioner's claim that the Respondent (SBA)'s decision to apply the exclusions in Section 120.110 (including the Financial Businesses Rule) to the PPP violated the CARES Act and was contrary

to law. *Id.   See DACO Investments, LLC v. SBA*, 2024 WL 750594 (W.D. La. February 22, 2024) (same);  *see also Celebrity of Springfield, LLC v. SBA*, 2025 WL 1276104, *5 (D.N.J. May 2, 2025) (rejecting Plaintiff's argument that the SBA's loan forgiveness denial exceeded its statutory authority by being incompatible with the CARES Act and contrary to the SBA's own implementing regulations);  *Forest View Rehabilitation and Nursing Center, LLC v. SBA*, 2024 WL 5247837, *7 (N.D. Ill. Dec. 30, 2024) ("Congress understood it was legislating against the existing -and broad- backdrop of § 7(a) when it added the CARES Act provisions establishing the PPP to that statutory framework).

In the present case, as the *Tidewater* and other decisions found, this Court should find that the First PPP statute is unambiguous, that Congress placed the First PPP under Section 7(a) of the Small Business Act" and that small business loans under Section 7(a) have historically been subject to the limitations listed in 13 C.F.R. § 120.110.  The Court should find that by permitting SBA to apply the "same terms, conditions, and processes" from prior small business loans to PPP loans, 15 U.S.C. § 636(a)(36)(B)), the statute's plain language grants SBA the discretion to apply the Financial Business Rule, 13 C.F.R. § 120.110(b) to PPP loans, as it did with the First PPP IFR.

The Court should reject Plaintiff's claim that the First PPP IFR (what Plaintiff terms the "Exclusion Rule") violates the CARES Act and is contrary to law.

### B.     The First PPP IFR Is Not Arbitrary and Capricious

Plaintiff alleges that First PPP IFR (what it calls the "Exclusion Rule") is arbitrary and capricious in violation of the APA.  This argument must be rejected.

In assessing APA claims, a court must assure itself that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *Lovely v. F.E.C.,* 307

F.Supp.2d 294, 298 (D. Mass 2004).

Here, that satisfactory explanation of the agency's action comes from Dianna Seaborn, Deputy Associate Administrator in SBA's Office of Capital Access. *See* Seaborn Decl. ¶¶ 2, 17.

As Deputy Associate Administrator Seaborn explains, when Congress passed the CARES Act to address the significant economic needs of small businesses, its mandate to SBA was crystal clear: (i) "provide relief to America's small businesses as expeditiously as possible;" (ii) guarantee "an enormous amount in PPP loans, up to $349 billion," in just three months' time; and (iii) issue implementing regulations within 15 days. *Id*. ¶¶ 5-9. Given this clear congressional intent, and the extraordinarily short time period for SBA to act, SBA reasonably concluded that its first focus was to draft rules to implement the modifications to Section 7(a) requirements that Congress had expressly prescribed in § 636(a)(36). Seaborn Decl. ¶ 11. To expedite the rapid approval and disbursement of PPP loans, the agency also focused on developing streamlined application and loan-origination procedures. *Id*. ¶ 12. Formulating the rule changes (and assembling the administrative apparatus) needed to immediately disburse hundreds of billions of dollars in PPP loans to millions of borrowers fully consumed the time and attention of the agency, leaving no opportunity to consider further modifications to Section 7(a) requirements, including to § 120.110. *Id.* ¶¶ 13-14. Because a key purpose of the First PPP IFR was to inform borrowers and lenders of what they needed to know to immediately apply for and approve PPP loans, *see id*. ¶ 16, SBA referred them to § 120.110 as a "key provision[]," 85 Fed. Reg. at 20811, of which they needed to be aware, Seaborn Decl. ¶¶ 16-17.

Deputy Associate Administrator Seaborn's declaration demonstrates that SBA considered the "relevant factors," *Roe v. Dep't of Def.*, 947 F.3d 207, 221 (4th Cir. 2020) -*i.e.,* the legislative and economic imperatives to make PPP loans available as soon as possible—and came to a

rational conclusion that this objective required it to focus its rulemaking efforts on the programmatic changes that Congress mandated, and the additional modifications needed to disburse PPP loans without delay. Potential changes to § 120.110 fell into neither category and so were not considered at the time SBA was drafting the First PPP IFR. SBA's reasoned explanation of its decision to include § 120.110 in the First PPP IFR requires that the decision be upheld. *Tidewater*, at *6; *DACO* at *12-13.

In the *Tidewater* case, where Deputy Associate Administrator Seaborn's declaration was also filed, that court held that "Upon de novo review, the court agrees . . . that the Seaborn Declaration articulated a satisfactory explanation for Respondent's actions," including a "rational connection between the facts and the choice made," and "does not show a clear error of judgment." *Id.* at *6; *See DACO Investments*, 2024 WL 750594 * 13 (relying on Dianna Seaborn's Declaration in finding that "the SBA has provided and did provide a reasoned explanation for its decision to incorporate the eligibility exclusions – including the "business of lending" exclusion from Section 120.110 into the PPP).

Thus, Plaintiff's facial "arbitrary and capricious" challenge to the First PPP IFR should be denied.

## C.  The First PPP IFR Is Not Arbitrary and Capricious as Applied to Plaintiff

Finally, Plaintiff alleges that the First PPP IFR (what Plaintiff calls the "Exclusion Rule") was applied in an arbitrary and capricious way to itself, stating: "SBA has denied loan forgiveness to Plaintiff based on its determination that Plaintiff is a business primarily engaged in lending.  According to its own data, however, SBA has forgiven loans to more than two thousand businesses with NAICS codes beginning with 522, which indicates that they are primarily engaged in lending."  (Complaint ¶ 98).   However, this last claim also fails.  Simply

23

pointing to other businesses with the same industry code whose loans were forgiven fails to carry Plaintiff's burden to show these other entities are "like cases" and establish arbitrary enforcement.

Plaintiff overstates the significance of different companies having the same NAICS code. Just because other entities selected the same NAICS code does not mean they are alike in all relevant respects or must be treated the same way.  Instead, there are a number of explanations for why Plaintiff's loan forgiveness application was denied, while others with the same NAICs code had their loans forgiven.

First, Forward Financing was selected for manual review. but other loans may have been subjected to only automated review, and NAICS codes had nothing to do with why one track or another applied to a particular loan.

As Martin Andrews explains, "Because it was infeasible to conduct manual forgiveness reviews of all 12 million PPP loans at the forgiveness stage, SBA implemented a two-step process involving automated screening of all loans at the outset, followed by manual forgiveness review of select loans afterward.   (Andrews Decl. ¶ 17).   At the initial, automated step, all loans, including those for which forgiveness is sought, are individually screened to identify anomalies and attributes that may be indicative of non-compliance with certain eligibility requirements, fraud, or other forms of abuse.  *Id.*

SBA's automated screening process did not examine borrowers' NAICS codes to select loans for manual forgiveness review.  (Andrews Decl. ¶ 18).   Borrowers selected during automated screening for manual forgiveness review were selected for reasons unrelated to their NAICS codes.  *Id.*  If a PPP borrower selected for manual forgiveness review was determined to be ineligible for loan forgiveness because it was primarily engaged in the business of lending, that determination would have been based on information that came to the attention of the

24

reviewing official during the course of the manual forgiveness review, not information culled during automated screening. *Id.*

In the present case, Forward Financing's loan failed automated review due to being flagged as a potentially ineligible business and was referred for manual review. (Andrews Decl. ¶ 22). As a result of the automated review failure, and because of the size of the loan and multiple hold codes, Forward Financing's loan underwent manual forgiveness review, during which it was determined that Forward Financing was an ineligible financial business under 13 C.F.R. § 120.110(b). (Andrews Decl. ¶ 22). A manual forgiveness review is based on the borrower's PPP loan and forgiveness applications and supporting documentation, and if necessary, additional documentation such as financial statements, tax records, or other records requested from the borrower. (Andrews Decl. ¶ 23). For those PPP loans not selected during automated screening or otherwise chosen for manual forgiveness review, SBA remitted the forgiveness payment in the amount requested by the lender in its forgiveness decision submitted to SBA. *Id.*

Second, Section 120.110(b) does not prohibit Section 7(a) loans to all firms engaged in the business of lending, only those that are "*primarily* engaged in the business of lending[.]" Therefore, if an entity is engaged in lending, but not *primarily* engaged in the business of lending, it can be eligible pursuant to exceptions identified in SOP 50 10 6, Part 2, Sec. A, Chap. 3 ¶ A.2.b at 141. For example, SBA considers a business to be eligible for Section 7(a) (including PPP) financing if it is a check-cashing business and receives more than 50 percent of its revenue from the service of cashing checks, or if it is a business that provides financing in the regular course of its business (such as a business that finances credit sales) and less than 50 percent of its revenue comes from financing sales. *See id.* at A.2.b.ii and iv. Accordingly, if SBA determines during the course of a manual forgiveness review that the borrower is engaged in the business of lending, it does not automatically deny forgiveness on grounds of ineligibility. Instead, the agency first will provide the borrower an opportunity to demonstrate that it is

covered by one of the exceptions identified in the SOP.  If the borrower can furnish documentation substantiating that it is so covered, then SBA does not regard it as primarily engaged in the business of lending and will not deny the borrower's forgiveness request on grounds of ineligibility under section 120.110(b).

Third, some borrowers may fall under an exception, permitting them to received PPP loans despite being in the business of lending.  For example, under another longstanding interpretation of 13 C.F.R. § 120.110(b), SBA does not consider mortgage companies that make loans but do not hold them, and instead sell them within 14 calendar days of loan closing, to be in the business of lending.   (Andrews Decl.  ¶ 29).  Accordingly, such businesses are eligible for Section 7(a) loans, including PPP loans.

In short, because Plaintiff fails to account for any of these distinguishing factors, this Court should deny Plaintiff's conclusory claim that "Defendant's denial of Plaintiff's forgiveness application, while granting forgiveness to other businesses, is therefore arbitrary and capricious and an abuse of discretion."  (Complaint ¶ 100).

### D.  <u>Plaintiff is Not Entitled to the Relief Requested</u>

Plaintiff seeks an order to "permanently enjoin the SBA from enforcing the Exclusion Rule, including against the Plaintiff, in determining forgiveness eligibility."  (Complaint, page 23).  Such relief is barred. The Small Business Act provides that "no . . . injunction . . . shall be issued against the [SBA] or [its] property." 15 U.S.C. § 634(b)(1).  The First Circuit has interpreted this statute to mean:  "The no-injunction language protects the agency from interference with its internal workings by judicial orders attaching agency funds, etc., but does not provide blanket immunity from every type of injunction. In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations." *UIlstein Maritime, Ltd. v. U.S.*,

833 F.2d 1052, 1057 (1ˢᵗ Cir. 1987).

In the present case, Plaintiff's request to permanently enjoin SBA from enforcing the "Exclusion Rule" against it would clearly interfere with the internal workings of the SBA and its processes for addressing loan forgiveness applications. As set forth above, the SBA is not exceeding its agency authority in enforcing the First PPP IFR (the "Exclusion Rule") as to the Plaintiff.

Plaintiff's request for injunctive relief is barred and should be denied.

## CONCLUSION

For the reasons stated, the SBA's motion for summary judgment should be granted, the Plaintiff's motion for summary judgment should be denied, and the SBA's decision denying Plaintiff's application for loan forgiveness should be affirmed.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated:  June 23, 2025                    By: */s/  Shawna Yen*
SHAWNA YEN
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA  02210
617-748-3100
Shawna.Yen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the NEF and paper copies to those not registered.

Dated: June 23, 2025                    By: */s/  Shawna Yen*
SHAWNA YEN
Assistant U.S. Attorney