**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

FORWARD FINANCING LLC,

        Plaintiff,

      v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION; ISABELLA CASILLAS
GUZMAN, in her official capacity as
Administrator of the Small Business
Administration; JANET YELLEN, in her official
capacity as United States Secretary of Treasury;
and THE UNITED STATES OF AMERICA,

        Defendants.

No. 1:24-cv-11689-FDS

**PLAINTIFF FORWARD FINANCING
LLC'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

<u>**PLAINTIFF FORWARD FINANCING LLC'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

## **TABLE OF CONTENTS**

I.      Introduction .................................................................................................. 1

II.     Statement of Facts ....................................................................................... 2

III.    Argument ...................................................................................................... 3

        a.      The Exclusion Rule is contrary to the CARES Act. ............................... 4

                i.      The PPP was explicitly intended to protect employment for as
                        many segments of the population as possible. ............................ 5

                ii.     The Exclusion Rule is not a "term[], condition[], or process[]" of
                        7(a) loan guarantees that is applicable to the PPP. ..................... 10

                iii.    Interpreting the CARES Act's eligibility criteria according to its
                        plain meaning does not render statutory language superfluous. .............. 13

        b.      The Exclusion Rule is arbitrary and capricious because SBA has never
                provided a reasoned basis for excluding intended beneficiaries of the PPP. ........ 15

        c.      SBA has applied the Exclusion Rule in an arbitrary and capricious
                manner ................................................................................................. 17

IV.     Conclusion ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akebia Therapeutics v. Azar*,
    443 F. Supp. 3d 219 (D. Mass. 2020) ....................................................................................18

*Atlantic Fish Spotters Ass'n v. Daley*,
    8 F. Supp. 2d 113 (D. Mass. 1998) ........................................................................................15

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
    467 U.S. 837 (1984) .................................................................................................................4

*DACO Invs., LLC v. United States SBA*,
    No. 6:22-CV-01444, 2024 U.S. Dist. LEXIS 33763 (W.D. La. Feb. 22, 2024) .....................18

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) .................................................................................................................15

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal*,
    591 U.S. 1 (2020) ...................................................................................................................16

*Diocese of Rochester v. SBA*,
    466 F. Supp. 3d 363 (W.D.N.Y. 2020) ..................................................................................12

*DV Diamond Club of Flint, LLC v. SBA*,
    960 F.3d 743 (6th Cir. 2020) .........................................................................................7, 12, 13

*Food Mktg Inst. v. Argus Leader Media*,
    588 U.S. 427 (2019) .................................................................................................................6

*In re Gateway Radiology Consultants*,
    983 F.3d 1239 (11th Cir. 2020) .............................................................................................12

*Judulang v. Holder*,
    565 U.S. 42 (2011) .................................................................................................................15

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) .............................................................................................................3, 4

*Nat'l Ass'n of Home Builders v. SBA*,
    No. 20-11780, 2021 U.S. Dist. LEXIS 186548 (E.D. Mich. Sept. 28, 2021) .................. *passim*

*Orr v. Trump*,
    No. 1:25-cv-10313-JEK, 2025 U.S. Dist. LEXIS 74577 (D. Mass. Ap. 18,
    2025) ......................................................................................................................................15

*SAS Institute, Inc. v. Iancu*,
    584 U.S. 357 (2018) ...................................................................................................6

*Scholl v. Mnuchin*,
    489 F. Supp. 3d 1008 (N.D. Cal. 2020) ...........................................................10, 17

*Skefos v. Carranza*,
    No. 19-29718-L; Adv. Proc. No. 20-00071, 2020 Bankr. LEXIS 1479 (Bankr.
    W.D. Tenn. June 2, 2020) .........................................................................................9

*Tradeways, Ltd. v. Dep't of the Treasury*,
    No. ELH-20-1324, 2020 U.S. Dist. LEXIS 110737 (D. Md. June 24, 2020)...................12, 13

*In re USA Gymnastics*,
    2020 Bankr. LEXIS No. 18-09108-RLM-11, No. 20-50055, 2020 Bankr.
    LEXIS 3747 (Bankr. S.D. Ind. June 12, 2020) .......................................................6

**Statutes**

5 U.S.C. § 706 ..........................................................................................................3, 15

15 U.S.C. § 636 .................................................................................................... *passim*

Consolidated Appropriations Act. 2021 Pub. L. 116-260, 134 Stat. 1182 (Dec. 27,
    2020) .......................................................................................................................14

Pub. L. No. 116-136, 134 Stat. 281 (2020).......................................................... *passim*

**Other Authorities**

166 Cong. Rec. H1920-03 (2020) ...............................................................................9

166 Cong. Rec. S1897-02 (2020) (Statement of Sen. Robert Portman) ......................9

85 Fed. Reg. 20,811 (Apr. 15, 2020) .................................................................. *passim*

85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2022) .........................................................8, 17

Fed. R. Civ. P. 56 .......................................................................................................3

Local Rule 56.1 ..........................................................................................................3

I.       **Introduction**

When Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), it directed the Small Business Administration ("SBA") to administer loans via the Paycheck Protection Program ("PPP") to help small businesses retain employees and survive the pandemic. Congress sought to stem the rising unemployment crisis through the PPP, offering forgivable loans to allow small businesses to keep people employed and pay crucial expenses. It placed the PPP in SBA's existing loan program, Section 7(a), but made a number of changes to the 7(a) program to ensure that PPP loans could serve their intended purpose, including, crucially, by expanding eligibility so that preexisting restrictions on the 7(a) loan program did not prevent workers and businesses from accessing relief.

Plaintiff Forward Financing LLC ("Forward Financing") applied for a PPP loan for this very purpose. Forward Financing is a small business finance company that provides working capital to small businesses throughout the country. Unlike traditional financing, Forward Financing's financing product allows its customers to reduce or pause their payments when they experience hard times. As its clients' operations were shut down by the pandemic, Forward Financing's business was stymied. While Forward Financing was not eligible for 7(a) loans prior to the PPP's passage because SBA excludes businesses primarily engaged in lending, such as finance companies, it applied for a PPP loan based on Congress's promise of expanded eligibility. Forward Financing received its loan and used it to keep its people employed and help its business survive the pandemic—just as Congress intended. But SBA later denied Forward Financing the forgiveness the CARES Act promised because SBA had implemented a rule applying its preexisting eligibility restrictions (the "Exclusion Rule") to the PPP.

SBA's implementation of the Exclusion Rule conflicted with the language of the CARES Act, which stated that it "increased" eligibility for 7(a) loans, and that "all" businesses meeting

statutory criteria (which Forward Financing met) "shall" be eligible. It also contradicted the goals of the Act, whose purpose was to keep Americans employed and small businesses open. Moreover, SBA acted arbitrarily and capriciously in implementing the Exclusion Rule. It has provided no reasoning that would explain the exclusion of businesses like Forward Financing. And SBA has forgiven thousands of loans to businesses primarily engaged in lending without providing any reasonable explanation as to why Forward Financing was different.

Now, Defendants offer excuses that fail to justify SBA's unlawful and arbitrary and capricious actions. Despite admitting that the plain language of the CARES Act forecloses the Exclusion Rule, Defendants ask the Court to interpret the language differently based on the statutory context—relying on the Small Business Act, not the CARES Act. Defendants provide no explanation to support SBA's exclusion of broad categories of businesses. In fact, they admit that SBA *did not consider* who Congress intended to benefit from the PPP, and simply state that it did not have time to do so. This is a textbook example of arbitrary and capricious action. Finally, Defendants rely again on the challenge of implementing the program as an excuse for forgiving thousands of loans to lenders while denying forgiveness to Forward Financing. Their explanations fall flat. They admit that they have forgiven loans to similarly situated "ineligible" businesses, and their descriptions of the loan review process conflict with what SBA communicated to Forward Financing when its loan was under review.

In sum, Defendants have failed to demonstrate that the Exclusion Rule was lawful, or that it was not arbitrary and capricious both in its implementation and its enforcement. Defendants are therefore not entitled to judgment as a matter of law, and their motion should be denied.

## II.    Statement of Facts

Plaintiff incorporates by reference the statement of facts set forth in its affirmative motion for summary judgment, docketed at ECF No. 43, and its Statement of Material Facts filed

pursuant to Local Rule 56.1, docketed at ECF No. 42 (attached as Exhibit A). While the material

facts are largely undisputed, Plaintiff notes that Defendants' explanations of why a hold code

was placed on its loan, triggering the review that led to forgiveness denial, are inconsistent.

When SBA informed Forward Financing that a hold had been placed on its loan, it indicated that

the hold was based on its NAICS code. GOV-001085. Now, Defendants offer the declaration of

Martin Andrews, which states that the loan was flagged during automated review but does not

specify whether this was due to its NAICS code—data which Andrews admits was used, albeit

inconsistently. Andrews Decl. ¶¶ 21-22. Defendants contend in their briefing that borrowers

selected for manual review "were selected for reasons unrelated to their NAICS codes." Def. Br.

24. Given these inconsistencies and SBA's own communications to Forward Financing, Forward

Financing disputes any contention that SBA did not use NAICS codes as a basis for conducting

manual review of, and denying forgiveness to, Forward Financing and other PPP borrowers.

## III.    Argument

To prevail on a motion for summary judgment, the movant must show (1) "there is no

genuine dispute as to any material fact," and (2) it "is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Courts must "hold unlawful and set aside agency action … found to be …

arbitrary, capricious… or otherwise not in accordance with the law, [or] in excess of statutory …

authority [.]" 5 U.S.C. § 706(2)(A), (C). "[T]he role of the reviewing court under the APA is …

to independently interpret the statute and effectuate the will of Congress subject to constitutional

limits." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 397 (2024). In doing so, "[c]ourts must

exercise their independent judgment," and they "may not defer to an agency interpretation of the

law simply because a statute is ambiguous." *Id*. at 412-13.[1]

---

[1]    Defendants rely on several out-of-jurisdiction cases evaluating the Exclusion Rule under the
now-defunct *Chevron* deference, which required courts to affirm an agency's decision so

Here, Defendants ask this Court to sanction their unlawful bait and switch with circular statutory interpretation, unavailing post-hac justifications, and speculation that actually ***admits*** that SBA arbitrarily forgave PPP loans to some number of borrowers similarly situated to Plaintiff. Defendants are not entitled to relief for three key reasons. First, SBA violated the CARES Act by implementing the Exclusion Rule, which prevented broad swaths of the CARES Act's intended beneficiaries from receiving relief. Second, SBA acted arbitrarily and capriciously by implementing the Exclusion Rule without providing any explanation of its reasoning for doing so, and without considering whether the excluded businesses were eligible under the statutory language and intent. Third, SBA has applied the Exclusion Rule arbitrarily and capriciously by forgiving thousands of loans issued to businesses who are ineligible according to the same criteria being applied against Forward Financing. SBA has failed to provide any reasoned explanation to justify this. Under the objective analysis of the statute that the Supreme Court requires and Defendants attempt to evade, SBA has acted contrary to law and arbitrarily and capriciously. Defendants are therefore not entitled to relief.

### a.    The Exclusion Rule is contrary to the CARES Act.

The CARES Act defines eligibility for the PPP in clear terms that promise relief to all businesses who meet the statutory criteria. Defendants contend, however, that despite the plain

---

long as it was a "rational" interpretation of an ambiguous statute. *See generally Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). While the Supreme Court indicated that cases relying on the *Chevron* deference remain valid for purposes of *stare decisis*, *Loper Bright*, 603 U.S. at 412, no such cases exist here. As the ALJ acknowledged in deciding Plaintiff's administrative appeal, there is no binding precedent in the First Circuit determining whether the Exclusion Rule was contrary to law, or arbitrary and capricious. GOV001242. Because the cases Defendants rely on are not binding on this Court, the Court should only consider them to the extent their reasoning is persuasive—and given the substantial agency deference they relied upon under *Chevron*, their reasoning should be viewed with substantial skepticism as this Court applies the new *Loper Bright* standard.

language of the statute, Congress intended to permit SBA to exclude seventeen categories of businesses, many of which were severely affected by the economic and public health crisis that the Act responded to. This position is untenable for several reasons.

*First,* it defies the rules of statutory construction, requiring the Court ignore the statute's plain language and meaning and instead defer to the goals of an entirely different statute. Despite the extraordinary and unique circumstances under which the CARES Act was passed, Defendants proffer an interpretation of the PPP based on the intent and context of the Small Business Act, which was passed in 1958 to achieve vastly different goals. *Second*, it erroneously interprets the CARES Act's incorporation of the "terms, conditions, and processes" of Section 7(a) loan guarantees, while vastly expanding the meaning of that phrase, as an endorsement of regulations imposing the Exclusion Rule. But this provision is made subject to all other provisions of the PPP, so it does not override the expanded eligibility criteria, and, critically, borrower loan eligibility is not a term, condition, or process of 7(a) loan guarantees, which are agreements between lenders and the SBA. *Finally,* Defendants' interpretation renders language incorporating the Exclusion Rule into the subsequent second draw PPP loan statute superfluous.

### i.     The PPP was explicitly intended to protect employment for as many segments of the population as possible.

"The [PPP] was enacted as part of an urgent legislative attempt to cope with the devastating, unprecedented, and rapid economic decline that occurred [at the start of the pandemic]." *Nat'l Ass'n of Home Builders v. SBA*, No. 20-11780, 2021 U.S. Dist. LEXIS 186548, at *33 (E.D. Mich. Sept. 28, 2021). While it was implemented as an amendment to the Section 7(a) loan program in the Small Business Act, the PPP cannot be understood as a garden-variety amendment that intended minimal changes to the program, particularly with respect to the intended beneficiaries. Congress telegraphed its intent to override prior eligibility restrictions

by titling the eligibility section: "**Increased Eligibility** for Certain Small Businesses and Organizations." 15 U.S.C. § 636(a)(36)(D) (emphasis added). Under this heading, Congress set forth criteria to ensure that loans were available to the broadest segment of workers possible. It stated that "**any** business concern" meeting the size and other criteria set forth in 15 U.S.C. § 636(a)(36)(D) "**shall** be eligible to receive a covered loan[.]" *Id.* (emphasis added). *See Nat'l Ass'n of Home Builders*, 2021 U.S. Dist. LEXIS 186548, at *28 ("[S]ection 636(a)(36)(D)(i) enunciates in no uncertain terms the criteria respecting the *types* and *sizes* of entities that may apply for PPP loans… 'any' means any, and 'shall' means shall. Any business within the specified size ranges may apply, and the SBA must lend to them."); *In re USA Gymnastics*, 2020 Bankr. LEXIS No. 18-09108-RLM-11, No. 20-50055, 2020 Bankr. LEXIS 3747, at *28 (Bankr. S.D. Ind. June 12, 2020) ("The statute's use of 'any' and 'shall' evinces a directive that is both 'mandatory and comprehensive.'") (quoting *SAS Institute, Inc. v. Iancu*, 584 U.S. 357, 362 (2018)). There is no doubt that Congress's goal was to save jobs with the PPP. Even apart from the text, the program's title, the **Paycheck Protection Program**, makes this clear.

It is black letter law that statutes should be interpreted according to their plain meaning. *See Food Mktg Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."). By stating that "any" business meeting the statutory size criteria "shall" be eligible, Congress foreclosed exclusions from PPP eligibility not set forth in the CARES Act, including those in the Exclusion Rule. Further, Congress explicitly excluded publicly traded companies from receiving loans, 15 U.S.C. § 636(a)(36)(D)(viii), demonstrating that it knew how to draft exclusions when it wanted to. *See DV Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743, 747 (6th Cir. 2020) (affirming holding that plaintiff was likely

to succeed on merits of claim that the Exclusion Rules was unlawful as contrary to the CARES Act). Defendants even admit that the ordinary meaning of the Act provides that all businesses meeting the statutory criteria are eligible. *See* Def. Br. 18 (arguing that here, "[t]he word 'any'" should "differ from its ordinary meaning" based on context).

Nonetheless, Defendants argue that it is inappropriate to interpret the PPP according to its plain meaning because doing so "fails to consider the statutory scheme as a whole." *Id*. at 15. But Defendants focus on the wrong statutory scheme; they refer only to Section 7(a) of the Small Business Act, ignoring the CARES Act, and the context under which it was passed, entirely. Congress passed the CARES Act "[t]o provide emergency assistance and health care response for individuals, families, and businesses affected by the 2020 coronavirus pandemic." Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "CARES Act"). When the CARES Act was signed, unemployment rates were skyrocketing. Employment decreased by 22 million jobs between February and April 2020, more than double the number lost during the Great Recession. *See* U.S. Department of Health and Human Services, COVID-19 and Economic Opportunity: Inequities in the Employment Crisis (April 2021), available at

https://aspe.hhs.gov/sites/default/files/migrated_legacy_files/199901/covid-economic-equity-brief.pdf (last accessed July 13, 2025). By April 2020, "weekly unemployment insurance claims reached 6.1 million, and remained 3.5 times higher than pre-pandemic levels." *Id*. This was a crisis of dramatic, unprecedented proportions facing American workers. This is the backdrop that must be considered to understand that Congress intended to grant forgivable loans to *all* businesses eligible under the CARES Act's statutory criteria.

As Defendants explain, Congress passed the Small Business Act in 1958, authorizing SBA "to guarantee general-purpose loans to small businesses 'for plant acquisition, construction,

conversion, or expansion, including the acquisition of land, material, supplies, equipment, and working capital[.]'" Def. Br. 3 (quoting 15 U.S.C. §636(a)). SBA codified the Exclusion Rule in 1996, excluding, *inter alia*, businesses engaged in lending, such as finance companies, reasoning that their operations do not further the goals set forth in Section 7(a) of the Small Business Act. *Id*. at 4. These goals could not be more removed from the purpose of the CARES Act.

Given the vastly different purposes of the CARES Act and standard Section 7(a) loans, it strains credibility to assert that Congress intended to incorporate the Exclusion Rule into the PPP. SBA clearly recognized that the PPP served different purposes from standard 7(a) loans. It described it as "a new loan program" in the interim final rule incorporating the Exclusion Rule into the PPP administration. 85 Fed. Reg. 20,811 (Apr. 15, 2020) ("IFR 1" or the "First Interim Final Rule"). Moreover, it removed some of the exclusions in a subsequent interim final rule, stating: "The Administrator…believes this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses." 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2022) ("IFR 2" or the "Second Interim Final Rule"). Through IFR 2, SBA acknowledged that the PPP was to be treated differently from 7(a) loans, but it failed to remedy its error with respect to the other businesses affected by the Exclusion Rule.

Defendants claim that applying the PPP as written would lead to "strange and usual results" because it would mean that Congress intended for loans to be directed to purportedly disfavored categories of businesses. Def. Br. 19. But while Congress described favored business purposes for standard 7(a) loans like plant acquisition and construction, its stated goal for the PPP was *keeping people employed*. *See* CARES Act Tit. I ("Keeping American Workers Paid and Employed Act"). In March 2020, Congress was not concerned with what businesses used

these loans—it was concerned that the employees of those businesses remained employed. As
the court in *Skefos v. Carranza* explained:

> Congress expressed its intent through the … PPP that emergency support be
> provided to American workers facing the loss of income and, in many cases,
> health insurance, in the face of the worst global pandemic in more than 100 years.
> Within that framework, the Administrator was not authorized to exclude
> American workers [based on pre-CARES Act 7(a) eligibility criteria].

No. 19-29718-L; Adv. Proc. No. 20-00071, 2020 Bankr. LEXIS 1479, at *28-29 (Bankr. W.D.
Tenn. June 2, 2020).[2]  Regardless of whether Congress generally disfavors certain types of
businesses, it does not disfavor entire categories of *workers*. Especially at the time the CARES
Act was passed, Congress intended to help keep *all* workers employed.

Congress's intent to help *all* Americans, rather than select favored and disfavored groups,
is consistent throughout the CARES Act. While Defendants list a purported parade of horribles
in arguing that applying the CARES Act's eligibility criteria as written would lead to absurd
results, Def. Br. 29, the reality is that the equivalent "absurd results" played out through the
individual stimulus, or "economic impact," payments. The CARES Act also provided direct
relief of fixed amounts for tax filers whose income was under certain thresholds. CARES Act §
2201. The breadth of this relief was unusual, as Congress did not exclude anyone who met the

---

[2]    Contemporaneous statements by legislators make this even clearer. For example, Senator
Portman said of the CARES Act: "[T]he best way to protect workers and get our economy
back up and running is **to enable employers to keep paying their employees.** [The PPP]
does just that." 166 Cong. Rec. S1897-02 (2020) (Statement of Sen. Robert Portman).
Senator Portman's statement also made clear that he understood only size-ineligible
businesses to be excluded: "For businesses that might not be eligible for these SBA loans,
the phase 3 stimulus helps provide immediate liquidity….These are larger businesses-say,
over 500 employees." *Id*. *See also* 166 Cong. Rec. H1920-03 (2020) ("These PPP loans,
which can be completely forgiven, **are essential for small businesses to continue paying
their employees and cover operating costs.**") (Statement of Rep. Norvell Granger); *id*.
("[The PPP] will help [small businesses] get on their feet **so they can keep their employees
on the payroll and off the unemployment roll.**") (Statement of Rep. Jodey Arrington).

income thresholds, such as incarcerated individuals, felons, or Americans living abroad. *See Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1035 (N.D. Cal. 2020) (enjoining IRS policy excluding incarcerated individuals, finding that it "well beyond the bounds of [the IRS's] statutory authority"). This is because Congress intended the relief to reach everyone.[3] This is entirely consistent with Congress's decision to make the PPP available to all categories of businesses, perhaps even more so given that Forward Financing helped 1000s of *other* small businesses survive the pandemic through payment relief on their financings.

In short, Congress meant what it said when it stated that "any business concern [that met the statutory criteria]… shall be eligible" for PPP loans.  Attempting to justify the unlawful Exclusion Rule, Defendants misconstrue the plain language of the statute and rely on the context of the Small Business Act—passed five decades before the Act they are interpreting.

   ii.  **The Exclusion Rule is not a "term[], condition[], or process[]" of 7(a) loan guarantees that is applicable to the PPP.**

Congress permitted SBA to guarantee PPP loans "under the same terms, conditions, and processes" as other Section 7(a) loans, 15 U.S.C. § 636(a)(36)(B). This did not permit it to impose 7(a) eligibility restrictions—which conflict with the statutory eligibility criteria, and in any event, are not terms, conditions, or processes. Defendants misconstrue this provision by claiming that it renders PPP loans subject to nearly all existing SBA authority and regulations governing the PPP, including the Exclusion Rule. *See* Def. Br. 15-16. This argument fails at the outset because this provision is made subject to the rest of the PPP: it begins with "except as

---

[3] Attempting to manufacture an absurd result from Congress's well-considered eligibility criteria, Defendants suggest that without the Exclusion Rule, PPP loans would be available to businesses engaged in illegal activities. Def. Br. 19. But expanding eligibility criteria for PPP loans did not absolve any illegality, and applicants were required to provide documentation substantiating their business, such as payroll records. Expanding eligibility criteria does not somehow require SBA to guarantee loans to drug cartels.

otherwise provided" by the statute. 15 U.S.C. § 636(a)(36)(B). The PPP overrides the Exclusion

Rule by providing that any business concern meeting the statutory criteria is eligible. *See Nat'l*

*Ass'n of Home Builders*, 2021 U.S. Dist. LEXIS 186548, at *24 (rejecting argument that 15

U.S.C. § 636(a)(36)(B) permits SBA to apply the Exclusion Rule).

      Moreover, even if the PPP statute did not explicitly set forth the eligibility criteria,

Subsection B would not incorporate the Exclusion Rule because it is not a term, condition, or

process of a ***guarantee***. To find otherwise would require extending the provision beyond its plain

meaning. The CARES Act provides that "the Administrator ***may guarantee covered loans*** under

the same terms, conditions, and processes as a loan made under this subsection." 15 U.S.C. §

636(a)(36)(B) (emphasis added). The PPP loan "guarantee" is SBA's agreement ***with lenders***

extending loans that it would purchase defaulted loans thereby making the lender whole. *See,*

*e.g.*, Small Business Administration, "Guaranty Purchase Process," available at

https://www.sba.gov/about-sba/sba-locations/loan-guaranty-centers/national-guaranty-purchase-

center-herndon-va/guaranty-purchase-process (last accessed July 13, 2025) (detailing processes

to request payment on SBA loan guarantee). And, a "covered loan" is a loan already "***made***

under this paragraph." 15 U.S.C. § 636(a)(36)(A)(ii) (emphasis added).[4] Thus, the statutory text

plainly means that SBA will guarantee ***to lenders*** loans already extended – and, therefore, for

which eligibility had already been established – under the same standard 7(a) loan guarantee

"terms, conditions, and processes." In other words, the borrower has no role in the loan

---

[4]    Thus, the plain and natural meaning of this section is that loans already made will then be guaranteed by SBA to lenders pursuant to loan guarantees incorporating standard "terms, conditions, and processes" of typical SBA loan guarantee agreements. This further proves that the "terms, conditions, and processes" clause refers to an element of the PPP – loan guarantees – that is separate and distinct from the loan-making process – borrower eligibility, which is addressed in separate sections of the CARES Act.

guarantee process and, the "terms, conditions, and processes" of the guarantee have no bearing on the borrower.

Even if this provision applied to the loans and not the guarantees, terms and conditions would be the parameters of the loans, like loan amounts, maturity terms, interest rates, and fees. Processes are the mechanisms for administering the loans. Eligibility is none of these things. Eligibility determines who may receive a loan, not its terms, conditions, or processes. SBA's own website distinguishes between "terms" and "conditions" on one hand, and "eligibility" on the other. *See Terms, conditions, and eligibility*, SBA (Dec. 5, 2024), available at

https://www.sba.gov/partners/lenders/7a-loan-program/terms-conditions-eligibility (last accessed July 13, 2025). *See also DV Diamond Club of Flint*, 960 F.3d at 747 ("This provision likely constitutes a catch-all governing procedures otherwise unaffected by the mandate of the CARES Act and the PPP and does not detract from the broad grant of eligibility.").

Defendants' reliance on *In re Gateway Radiology Consultants, P.A., Tradeways Ltd. v. Dep't of the Treasury*, and *Diocese of Rochester v. SBA* in interpreting this provision is misplaced because these cases evaluated challenges to SBA's exclusion of entities in bankruptcy proceedings (the "Bankruptcy Exclusion"), which was based in statutory text.[5] *In re Gateway Radiology Consultants*, 983 F.3d 1239, 1262 (11th Cir. 2020) (upholding Bankruptcy Exclusion under *Chevron* deference); *Diocese of Rochester v. SBA*, 466 F. Supp. 3d 363 (W.D.N.Y. 2020) (same); *Tradeways, Ltd. v. Dep't of the Treasury*, No. ELH-20-1324, 2020 U.S. Dist. LEXIS 110737 (D. Md. June 24, 2020) (same). The Bankruptcy Exclusion is "unlike" the "very different

---

[5] Section 7(a) loans are subject to a statutory requirement that they must "be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(6). While the PPP explicitly expanded eligibility for PPP loans and waived some statutory requirements, it did not waive the sound value requirement. *See Nat'l Ass'n of Home Builders*, 2021 U.S. Dist. LEXIS 186548, at *26-27.

regulations" implementing the Exclusion Rule, because "the bankruptcy disqualification was rooted in an express and co-equal statutory creditworthiness limitation embodied by 15 U.S.C. § 636(a)(6)[.]" *Nat'l Ass'n of Home Builders*, 2021 U.S. Dist. LEXIS 186548 at *27. Nor should this Court follow the *Tidewater* court's flawed analysis. In permitting SBA to **guarantee** loans according to its standard "terms, conditions, and processes" for Section 7(a) loans, Congress did not override the PPP's clear eligibility criteria, nor did it include eligibility as a term, condition, or process. *See Nat'l Ass'n of Home Builders*, 2021 U.S. Dist. LEXIS 186548 at *25 (rejecting argument that the "terms, conditions, and processes" provision permits the Exclusion Rule); *DV Diamond Club of Flint*, 960 F.3d at 747 (same).

### iii. Interpreting the CARES Act's eligibility criteria according to its plain meaning does not render statutory language superfluous.

Finally, Defendants incorrectly contend that applying the CARES Act's eligibility provisions as written would render certain provisions of the CARES Act superfluous. Def. Br. 16. The opposite is true. The only example Defendants offer of language purportedly rendered superfluous is § 636(a)(D)(i)'s listing of nonprofit organizations as eligible. Def. Br. 16-17. But this language is not superfluous. The provision states:

> [I]n addition to small business concerns, **any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern …** shall be eligible … if [it meets certain size-based criteria].

15 U.S.C. §636(a)(36)(D)(i) (emphases added). If "nonprofit organization" were not listed, nonprofits would not be eligible because they are not business concerns. *See* SBA, "Small Business Compliance Guide: A guide to the SBA's Size Program and Affiliation Rules (July 2020), available at https://home.treasury.gov/system/files/271/SBA-Small-Business-Compliance.pdf (last accessed July 13, 2025), at 7 ("A nonprofit organization is not a business concern."). Congress's explicit inclusion of nonprofit organizations is not, therefore, a

suggestion that nonprofits would be ineligible under the Exclusion Rule; it remedies that they would be ineligible under the statutory language absent its clarification. *See Natl Ass'n of Home Builders v. United States SBA*, 2021 U.S. Dist. LEXIS 186548, at *25 ("It was necessary to specify non-profits because they are not businesses, whereas the Act's specification that eligibility is conferred on 'any businesses concern' encompasses … businesses … that would ordinarily be ineligible for loans."). Defendants have not identified any other language that is superfluous when interpreting the Act's eligibility criteria according to its plain meaning.

Conversely, Defendants' reading of the Act does create superfluous statutory language. In December 2020, Congress authorized SBA to issue "second draw" PPP loans, through further amendment to Section 7(a) in the Consolidated Appropriations Act. 2021 Pub. L. 116-260, 134 Stat. 1182 (Dec. 27, 2020). This time, Congress adopted the Exclusion Rule stating that eligible entities "do[] not include [] any entity that is a type of business concern…described in [the Exclusion Rule]." 15 U.S.C. §636(a)(37)(A)(iv)(III)(aa).  This makes it even clearer that Congress did not intend to apply the Exclusion Rule to the first round of PPP loans. *See Nat'l As'sn of Home Builders*, 2021 U.S. Dist. LEXIS 186548, at *31-32 ("The adoption of that language in the subsequent enactment proves that Congress was, and is, well aware of the regulatory background against which the original PPP was created, and that when it desires to do so it knows exactly how to adopt and endorse previously issued regulatory qualifications."). If Congress intended for the Exclusion Rule to apply to the PPP, then this language in the second draw loan provisions is superfluous—especially because SBA had already imposed those restrictions. "A statutory interpretation that renders another statute superfluous is of course to be avoided." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003).

For these reasons, Defendants are not entitled to summary judgment because the Exclusion Rule is contrary to law and must be set aside.

b.    **The Exclusion Rule is arbitrary and capricious because SBA has never provided a reasoned basis for excluding intended beneficiaries of the PPP.**

Courts must "hold unlawful and set aside" agency action that is "arbitrary and capricious." *Orr v. Trump*, No. 1:25-cv-10313-JEK, 2025 U.S. Dist. LEXIS 74577, at *61-62 (D. Mass. Ap. 18, 2025) (citing 5 U.S.C. § 706(2)(A)). The Exclusion Rule is arbitrary and capricious because it directly opposes Congress's intent in creating the PPP. *See, e.g., Judulang v. Holder*, 565 U.S. 42, 60 (2011) (finding policy arbitrary and capricious where it interfered with the intended effects of the statute at issue). As detailed in Section III.a.i., *supra*, Congress intended to provide immediate relief to broad segments of the American workforce, including those that are typically ineligible for Section 7(a) loans, to keep people employed and help businesses survive the pandemic. The Exclusion Rule is arbitrary and capricious because it barred large swaths of the Act's intended beneficiaries from receiving relief. *See Orr*, 2025 U.S. Dist. LEXIS 74577, at *37-38 (policy is arbitrary and capricious where government did not "attempt to justify" policy by reference to express purposes of directive); *Atlantic Fish Spotters Ass'n v. Daley*, 8 F. Supp. 2d 113, 118 (D. Mass. 1998) (regulation arbitrary and capricious where it fails to address concerns behind the relevant statute).

To survive arbitrary and capricious review, the agency's policy must be "reasonable and reasonably explained." *Orr*, 2025 U.S. Dist. LEXIS 74577, at *62. Defendants have not met this burden. First, SBA did not provide any contemporaneous explanation as to why it applied the Exclusion Rule to the PPP, despite Congress's clear direction to the contrary. Then, in their motion, Defendants merely offer a post-hac explanation of SBA's decision to implement the Exclusion Rule that fails to provide a single basis for excluding broad categories of intended

15

beneficiaries other than that SBA was pressed for time in the implementation. *See* Def. Br. 21-23. This is patently insufficient to survive arbitrary and capricious review. As a preliminary matter, SBA cannot simply invent a post-hac rationale for its action. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (agencies must rely on contemporaneous reasoning, and "may not provide new" reasons after the fact). While an agency may "elaborate" on a rationale provided at the time an action was taken, *see id.*, here there was no rationale offered at all when IFR 1 was implemented. *See* 85 Fed. Reg. 20,811.

To make matters worse, SBA appears to now admit it *did not consider* who Congress intended to benefit from the PPP. Defendants offer the declaration of Dianna Seaborn, Deputy Administrator in SBA's Office of Capital Access (the "Seaborn Declaration") to explain why SBA implemented IFR 1. Seaborn references the PPP's intended beneficiaries as "small businesses experiencing economic hardship in the midst of the coronavirus pandemic[,]" *id.* ¶ 4, but admits that SBA "did not initially consider" prior to publishing IFR 1 whether businesses affected by the Exclusion Rule should be permitted to obtain PPP loans. *Id*. ¶ 14. In defense of this, Seaborn relies on the conclusory—and incorrect—legal position that "the CARES Act did not … modify application of any of [SBA's prior] eligibility restrictions to the PPP." *Id*. Notably, while Defendants now argue that the Exclusion Rule was incorporated by Congress by nature of the PPP having been implemented under Section 7(a), *see* Def. Br. 15-16, SBA appeared to believe otherwise at the time it passed IFR 1, which otherwise would have been superfluous.

Defendants offer no explanation—either contemporaneous or post hac—that explains how excluding businesses like Forward Financing, who faced the same challenges of the pandemic as everyone else, and whose employees' jobs were no less worthy of protecting, was a reasonable means of implementing the CARES Act. Defendants have cited no authority holding

that exigency alone can justify agency action that is contrary to the intent of the statute it is implementing, and that the agency has offered no reasoned support for. *See Scholl*, 489 F. Supp. 3d at 1037 ("While the court is cognizant of the burdens imposed by society's response to the COVID-19 pandemic layered onto the challenge of administering a massive stimulus program in a short amount of time, a basic tenet of the APA (and government generally) is to explain the basis of an agency's decision that affects legal rights and responsibilities.") (finding IRS policy withholding economic impact payments to incarcerated individuals arbitrary and capricious).

Moreover, even if exigency *could* justify applying the exclusions through IFR 1 (which it cannot), it certainly does not excuse SBA's continued application of the Exclusion Rule. When SBA issued IFR 2, it had determined that waiving the Exclusion Rule for legal gambling businesses was "more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses." IFR 2. It offered no explanation as to why the other categories of businesses were not subject to the same reasoning, nor do Defendants answer that question here. Even if SBA had some leeway to not consider whether excluded businesses were intended beneficiaries of the Act when it issued IFR 1, this leeway would not have permitted it to arbitrarily exclude intended beneficiaries in perpetuity. SBA fixed its error with respect to legal gambling businesses when it issued IFR 2. Its failure to do so for other wrongfully excluded entities, without ever offering a reasoned explanation, was arbitrary and capricious.

      **c.**    **SBA has applied the Exclusion Rule in an arbitrary and capricious manner.**

SBA has also failed to justify its inconsistent application of the Exclusion Rule that has granted more than $1.6 billion in forgiveness to entities that use NAICS codes beginning with 522, which designate that they are primarily engaged in lending. "[A]n agency must give a reasoned analysis to justify disparate treatment of regulated parties that seem similarly situated. If such disparate treatment is not supported with a reasoned explanation and substantial evidence

in the record, the treatment is arbitrary and capricious and violates the APA." *DACO Invs., LLC v. United States SBA*, No. 6:22-CV-01444, 2024 U.S. Dist. LEXIS 33763, at *41-42, *46 (W.D. La. Feb. 22, 2024) (denying SBA motion for summary judgment due to "genuine issues of material fact regarding whether the SBA arbitrarily and capriciously declined to forgive the Plaintiff's request for [PPP loan] forgiveness while granting the requests of similarly situated financial businesses"). *See also Akebia Therapeutics v. Azar*, 443 F. Supp. 3d 219, 227-30 (D. Mass. 2020) (consistent implementation necessary to survive arbitrary and capricious review). It is readily apparent from SBA's publicly available data that SBA has forgiven approximately 75% of the PPP loans issued to businesses that were ineligible under the same criteria as Forward Financing. *See* ECF No. 43 at 10-11. Defendants do not deny the veracity of this data or dispute the legal principle that an agency's inconsistent enforcement of rules is arbitrary and capricious. *See* Def. Br. 23-26. Instead, they attempt to defend their inconsistent application of the rule.

First, Defendants describe a patchwork of processes, including automated, sampling, and manual review, to defend using NAICS codes only sometimes to deny forgiveness applications. Andrews Decl. ¶¶ 17-21.[6] Regardless of whether SBA uses NAICS codes as a datapoint for screening, the NAICS data shows that SBA has completely failed to treat borrowers like Forward Financing consistently. The results—forgiveness of 75% of loans to businesses with 522 codes— speak for themselves. Further, Defendants have not provided a plausible explanation of why Forward Financing's application was subject to a hold code and ultimately denied, other than its NAICS code. To the contrary, on July 27, 2021, SBA informed Forward Financing's lender that

---

[6] As detailed herein, even under any version of Defendants' inconsistent explanations, SBA's actions are arbitrary and capricious. Forward Financing is entitled to summary judgment in its affirmative motion for this reason. If, however, the Court finds that any of Defendants' explanations may salvage SBA's decisions, SBA is still not entitled to summary judgment because the inconsistent nature of their stories creates a genuine dispute of material fact.

a hold code had been placed on its loan *because* Forward Financing had an NAICS code that indicated it was ineligible. The letter from SBA defined the hold code as follows: "NAICS 522 – Credit Intermediation – Borrower appears to be engaged in lending – Potential eligibility issue[.]" GOV-001085-86. While Defendants claim that Forward Financing was selected for manual review through an automated screening process that "flagged [it] as a potentially ineligible business," they have not identified a single factor other than NAICS code that caused the hold to be placed on the loan. Def. Br. 24.

Second, Defendants argue that some of the businesses with NAICS codes beginning with 522 might be eligible under exceptions to the exclusion Rule. This conflicts with the definitions of these NAICS codes, and even if true, would not remedy the underlying problem that the *vast majority* of those forgiven loans were received by businesses equally subject to the Exclusion Rule as Forward Financing. Businesses whose NAICS codes beginning with 52 are "establishments **primarily engaged in financial transactions**," and entities whose codes begin with 522 are primarily engaged in one of several forms of lending or financing. North American Industry Classification System, www.census.gov (emphasis added).[7]  NAICS codes represent businesses' primary activities. *See* United States Census Bureau, North American Industry Classification System, Frequently Asked Questions, available at https://www.census.gov/naics/#q4 (last accessed July 13, 2025) (instructing businesses to choose the NAICS Code that "most closely corresponds to your **primary business activity**"); ("The U.S. Census Bureau assigns one NAICS code to each establishment **based on its primary activity (generally the activity that generates the most revenue for the establishment)[.]**")

---

[7]    Available at https://www.census.gov/naics/?input=52&year=2022&details=52 (last accessed July 13, 2025) and https://www.census.gov/naics/?input=52&year=2022&details=522 (last accessed July 13, 2025).

(emphases added). Thus businesses with 522 NAICS codes have been identified as being primarily engaged in lending or financing—and would be ineligible under the Exclusion Rule.

Defendants attempt to rescue their inconsistent application of the Exclusion Rule to financial businesses by arguing that "if an entity is engaged in lending, but not *primarily* engaged in the business of lending, it can be eligible[.]" Def. Br. 25. Citing to hypothetical examples of a check-cashing business that provides financing, and a mortgage company that makes loans but does not hold them, Defendants contend that businesses with a 522 NAICS code may still be eligible under the Exclusion Rule. *Id*. 25-26. But if financing or lending is not the *primary* business of these entities (as is required in Defendants' hypotheticals), they would not fall under the 522 NAICS codes' definitions. Defendants have simply argued that not all businesses engaged in lending are primarily engaged in lending; they have offered no evidence that any such businesses operate under NAICS codes beginning with 522.

Finally, even assuming *arguendo* that there are businesses with a 522 NAICS code that are not primarily engaged in lending or financing, these are the exceptions. Of the approximately 2,200 loans greater than $150,000 that were forgiven for borrowers operating under 522 NAICS codes, very few are likely to fall under Defendants' hypotheticals that require misapplication of the classification system. This does nothing to resolve the fundamental problem with SBA's enforcement of the Exclusion Rule. Thousands of businesses primarily engaged in lending and financing activities received loan forgiveness, and without any explanation of why Forward Financing is any different, Forward Financing was denied it. This is arbitrary and capricious.

## IV.    Conclusion

As detailed herein, Defendants are not entitled to relief because the SBA's application of the Exclusion Rule to the PPP is both contrary to the CARES Act and arbitrary and capricious. The Court should therefore deny Defendants' motion for summary judgment.

20

Respectfully submitted,

Dated: July 14, 2025

/s/ *Terence M. Grugan*

Terence M. Grugan, Esq. (*admitted pro hac vice*)
Kelly M. McGlynn, Esq. (*admitted pro hac vice*)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

James V. Masella III, Esq. (BBO No. 562882)
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, New York 10019
(646) 346-8024
masellaj@ballardspahr.com

*Counsel for Plaintiff, Forward Financing, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, Kelly M. McGlynn, hereby certify that this document filed through the ECF system and all attachments will be sent electronically on July 14, 2025 to the registered participants as identified on the Notice of Electronic Filing (NEF) and that there are no non-registered parties to this action.

<u>  */s/ Kelly M. McGlynn*    </u>
Kelly M. McGlynn, Esq.